**Case Nos. 12-17668, 12-16995, and 12-16998**

---

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

BEVERLY SEVCIK, et al., *Plaintiffs-Appellants*,

v.

BRIAN SANDOVAL, et al., *Defendants-Appellees*, and

COALITION FOR THE PROTECTION OF MARRIAGE, *Intervenor-Defendant-Appellee*.

---

On Appeal from the United States District Court for the District of Nevada
Case No. 2:12-CV-00578-RCJ-PAL, The Hon. Robert C. Jones, District Judge.

---

NATASHA N. JACKSON, et al., *Plaintiffs-Appellants*,

v.

NEIL S. ABERCROMBIE, Governor, State of Hawai'i, *Defendant-Appellant*,

LORETTA J. FUDDY, Director, Department of Health, State of Hawai'i, *Defendant-Appellee*, and

HAWAII FAMILY FORUM, *Intervenor-Defendant-Appellee*.

---

On Appeal from the United States District Court for the District of Hawaii
Case No. 1:11-cv-00734-ACK-KSC, The Hon. Alan C. Kay, Sr., District Judge.

---

**AMICUS CURIAE BRIEF OF GAY & LESBIAN ADVOCATES &
DEFENDERS IN SUPPORT OF PLAINTIFFS-APPELLANTS SEVCIK
AND JACKSON AND IN SUPPORT OF REVERSAL OF THE
JUDGMENTS BELOW**

---

Mary L. Bonauto
Civil Rights Project Director
Gay & Lesbian Advocates & Defenders
30 Winter St., Suite 800
Boston, MA 02108
(617) 426-1350
mbonauto@glad.org
**Attorney for Amicus Curiae**

# TABLE OF CONTENTS

Page

INTEREST OF AMICUS CURIAE ..........................................................................1

ARGUMENT ........................................................................................................3

I.  Nevada's and Hawaii's Registered Domestic Partnership and Civil
Union Laws Perpetuate Discrimination Even Though They Also
Provide Some  Benefits ..................................................................................3

II. Marriage Provides Access to Numerous Tangible Protections and
Responsibilities Under Federal Law that Are Otherwise
Inaccessible to Those Joined in Registered Domestic Partnership or
Civil Union. ...................................................................................................6

    A.  Office of Personnel Management ..........................................................8

    B.  Department of Defense ........................................................................10

    C.  Department of Homeland Security .......................................................12

    D.  Department of State ............................................................................14

    E.  Department of the Treasury and Internal Revenue Service ...............15

    F.  Department of Labor ...........................................................................19

    G. Department of Health and Human Services .........................................25

    H. Social Security Administration ............................................................27

    I.  Department of Veterans Affairs ...........................................................29

    J.  Office of Governmental Ethics ...........................................................29

    K. Federal Election Commission .............................................................30

CONCLUSION ....................................................................................................31

# TABLE OF AUTHORITIES

## CASES

*Baker v. Vermont*,
    744 A.2d 864 (Vt. 1999)....................................................................1

*Garden State Equality v. Dow*,
    No. M-208(N.J. Oct. 18, 2013).......................................................7

*Goodridge v. Dep't of Pub. Health*, 798 N.E.2d 941
    (Mass. 2003) ........................................................................1, 3, 5

*In re Marriage Cases*,
    183 P.3d 384 (Cal. 2008)................................................................5

*Kerrigan v. Comm'r of Pub. Health*,
    957 A.2d 407 (Conn. 2008) ........................................................1, 5

*Massachusetts v. U.S. Dep't of Health and
    Human Servs.*,
    682 F.3d 1 (1st Cir. 2012)..............................................................1

*Opinions of the Justices to the Senate*,
    802 N.E.2d 565 (Mass. 2004)......................................................1, 5

*Pedersen, et al. v. Office of Pers. Mgmt*,
    881 F.Supp. 2d 294 (D. Conn. 2012) ........................................ 1-2

*Sevcik v. Sandoval*,
    911 F. Supp. 2d 996 (D. Nev. 2012) ............................................6

*United States v. Windsor*,
    133 S.Ct. 2675 (2013)..........................................................*passim*

## CONTITUTIONS & STATUTES

5 U.S.C. § 8901(5) ....................................................................9

26 U.S.C. §§ 72(t)(2)(B)-(C) ....................................................25

26 U.S.C. § 105 ................................................................................................22

26 U.S.C. § 106 ................................................................................................20

26 U.S.C. § 121 ................................................................................................18

26 U.S.C. § 125(a) ...........................................................................................22

26 U.S.C. § 152 ................................................................................................22

26 U.S.C. § 213 .......................................................................................... 17-18

26 U.S.C. § 215(a) ...........................................................................................19

26 U.S.C. § 219(c) ...........................................................................................18

26 U.S.C. § 401(a) ......................................................................................19, 25

26 U.S.C. § 401(k)(2)(B)(i)(IV) .....................................................................25

26 U.S.C. § 414(p) ...........................................................................................19

26 U.S.C. § 415(b)(2)(b) ..................................................................................24

26 U.S.C. § 417(c) ...........................................................................................24

26 U.S.C. § 1041 .........................................................................................16, 19

26 U.S.C. § 2056(a) .........................................................................................16

26 U.S.C. § 2501 ..............................................................................................16

26 U.S.C. § 2512 ..............................................................................................16

26 U.S.C. § 5000(b)(1) .....................................................................................20

26 U.S.C. § 9801(f) ..........................................................................................23

29 U.S.C. § 1055 ..............................................................................................24

29 U.S.C. § 1056 ...............................................................................19

29 U.S.C. § 1161(b) ..........................................................................22

29 U.S.C. §§ 1163(1)-(6) ..................................................................22

29 U.S.C. § 1167 ..........................................................................20, 22

29 U.S.C. § 2611 ........................................................................ 19-20

29 U.S.C. § 2612(a)(1)(C) ................................................................19

38 U.S.C. § 103(c) ............................................................................29

42 U.S.C. § 416(h)(1)(A)(ii) .............................................................28

Consolidated Omnibus Budget Reconciliation Act of 1985,
    Pub. L. No. 99-272, 100 Stat. 82 ...............................................22

Defense of Marriage Act, Pub. L. No. 104-199, 110 Stat. 2419 ...............................4

Haw. Const. art. I, § 23 ......................................................................4

Haw. Rev. Stat. § 572-1 ......................................................................4

Haw. Rev. Stat. § 572B-9 ....................................................................3

Health Insurance Portability and Accountability Act of 1996,
    Pub. L. 104-191, 110 Stat. 1936 ...............................................23

Nev. Const. art. 1, § 21 ......................................................................4

Nev. Rev. Stat. § 122.020(1) ...............................................................4

## OTHER AUTHORITIES

11 C.F.R. § 110.1(i) ..........................................................................31

Treas. Reg. § 1.106-1 ........................................................................21

Treas. Reg. § 54.4980B-1 ........................................................................23

Treas. Reg. § 54.9801-6 ..........................................................................23

Treas. Regs. §§ 1.401(k)-1(d)(3)(iii)(B)(1), (3), (5).................................25

*Announcement on Visa Changes for Same-Sex Couples*,
        state.gov (Aug. 2, 2013),
        http://www.state.gov/secretary/remarks/2013/08/212643.
        htm ............................................................................................ 14-15

*Answers to Frequently Asked Questions for Individuals of the
        Same Sex Who Are Married Under State Law*, irs.gov,
        (last updated Sept. 19, 2013), www.irs.gov/uac/Answers-
        to-Frequently-Asked-Questions-for-Same-Sex-Married-
        Couples ................................................................... 16-17, 18, 23

*Benefits Eligibility for Couples of Civil Unions or other Legal
        Same-Sex Relationships*, ssa.gov (Sept. 9, 2013),
        *available at* http://ssa-
        custhelp.ssa.gov/app/answers/detail/a_id/2501 .............................28

*Declaration/Dissolution of a Same-Sex Domestic Partnership
        for DEERS Enrollment*, 78 Fed. Reg. 54,633, (proposed
        Aug. 29, 2013) ..............................................................................12

Dep't Health & Human Servs., Ctrs. for Medicaid and Medicare
        Servs., *Guidance on Internal Revenue Ruling 2013-17
        and Eligibility for Advance Payments of Premium Tax
        Credit and Cost-Sharing Reductions* at 2 (Sept. 27, 2013)
        *available*
        *at* http://www.cms.gov/CCIIO/Resources/Regulations-
        and-Guidance/Downloads/marketplace-guidance-on-irs-
        2013-17.pdf............................................................................ 25-26

Dep't Health & Human Servs., Ctrs. for Medicaid and Medicare
        Servs., *SHO# 13-006*, (Sept. 27, 2013) *available*
        *at* http://www.medicaid.gov/Federal-Policy-
        Guidance/Downloads/SHO-13-006.pdf .......................................26

Dep't Health & Human Servs., *Impact of* United States v. Windsor *on Skilled Nursing Facility Benefits for Advantage Enrollees* (Aug. 29, 2013), *available at* http://www.cms.gov/Medicare/Health-Plans/HealthPlansGenInfo/Downloads/SNF_Benefits_Post_Windsor.pdf ........................................26

Dep't of Defense, Memo. From Sec'y Chuck Hagel, *Extending Benefits to the Same-Sex Spouses of Military Members* (Aug. 13, 2013), *available at* http://www.defense.gov/home/features/2013/docs/Extending-Benefits-to-Same-Sex-Spouses-of-Military-Members.pdf ........................................ 10-11

Dep't of Defense, Memo. from Sec'y Chuck Hagel, *Further Guidance on Extending Benefits to the Same-Sex Spouses of Military Members*, *available at* http://www.defense.gov/home/features/2013/docs/Further-Guidance-on-Extending-Benefits-to-Same-Sex-Spouses-of-Military-M.pdf ........................................ 11-12

Dep't of Defense, Memo. from Sec'y Leon Panetta, *Extending Benefits to Same-Sex Domestic Partners of Military Members* (Feb. 11, 2013), *available at* www.defense.gov/news/Same-SexBenefitsmemo.pdf ...........................12

Dep't of Justice, Office of the Att'y General, Letter to Honorable John Boehner (Sept. 4, 2013) *available at* http://www.justice.gov/iso/opa/resources/557201394151530910116.pdf ........................................29

Dep't of Labor, Technical Release No. 2013-04, *Guidance to Employee Benefit Plans on the Definition of 'Spouse' and 'Marriage' under ERISA and the Supreme Court's Decision in* United States v. Windsor (Sept. 18, 2013), *available at* http://www.dol.gov/ebsa/newsroom/tr13-04.html ........................................23

Dep't of Labor, Wage & Hour Div., Fact Sheet No. 28F,
  *Qualifying Reasons for Leave under the Family and
  Medical Leave Act* (August 2013), *available
  at* http://www.dol.gov/whd/regs/compliance/whdfs28f.ht
  m ........................................................................................20

Dep't of State, Announcement No. 2013_07_026, *Foreign
  Service Retirement Benefits for Same-Sex Spouses* (July
  8, 2013) ...............................................................................15

*DOD Announces Same-Sex Benefits*, defense.gov (Aug. 14,
  2013),
  http://www.defense.gov/releases/release.aspx?releaseid=
  16203 ...................................................................................11

Fed. Election Comm'n, Advisory Opinion 2013-06 (July
  25, 2013), *available at*
  http://www.fec.gov/pages/fecrecord/2013/september/ao2
  013-06.shtml ........................................................................31

Fed. Election Comm'n, Advisory Opinion 2013-07 (July
  25, 2013), *available
  at* http://www.fec.gov/pages/fecrecord/2013/september/a
  o2013-07.shtml .....................................................................31

IRS, Notice 2013-61, *Application of* Windsor *Decision and
  Rev. Rul. 2013-17 to Employment Taxes and Special
  Administrative Procedures for Employers to Make
  Adjustments or Claims for Refund or Credit, available
  at* http://www.irs.gov/pub/irs-drop/n-13-61.pdf ...........................................21

M. V. Lee Badgett, Center for American Progress & UCLA
  Williams Institute, Unequal Taxes on Equal Benefits
  (Dec. 2007) ..........................................................................21

Margot L. Crandall-Hollick et al., Cong. Research Serv.,
  R43157, *The Potential Federal Tax Implications of*
  United States v. Windsor *(Striking Section 3 of the
  Defense of Marriage Act (DOMA))*: Selected Issues

(July 18, 2013) ...............................................................................18

Notice of Opportunity for Annuitants to Elect Survivor Annuity
    Benefits for Same-Sex Spouses, 78 Fed. Reg. 47,018
    (Aug. 2, 2013) ...........................................................................10

Office of Gov't Ethics, LA-13-10, *Effect of the Supreme Court's*
    *Decision in* United States v. Windsor *on the Executive*
    *Branch Ethics Program*, (Aug. 19, 2013), *available*
    *at* www.oge.gov/OGE-Advisories/Legal-Advisories/LA-
    13-10--Effect-of-the-Supreme-Court-s-Decision-in-
    United-States-v--Windsor-on-the-Executive-Branch-
    Ethics-Program ..........................................................................30

Office of Pers. Mgmt., Benefits Admin. Letter No. 13-203,
    *Coverage of Same-Sex Spouses*, (July 17, 2013),
    *available at* http://www.opm.gov/retirement-
    services/publications-forms/benefits-administration-
    letters/2013/13-203.pdf ........................................................... 8-10

Office of Pers. Mgmt., Memo. from Dir. Elaine Kaplan, *Family*
    *and Medical Leave Act (FMLA) Coverage of Same-Sex*
    *Spouses*, (Oct. 21, 2013), *available*
    *at* http://www.chcoc.gov/transmittals/TransmittalDetails.
    aspx?TransmittalID=5834 ..........................................................10

Office of Pers. Mgmt., Memo. from Dir. Elaine Kaplan,
    *Guidance on the Extension of Benefit to Married Gay*
    *and Lesbian Federal Employees, Annuitants, and Their*
    *Families* (June 28, 2013), *available*
    *at* http://www.chcoc.gov/transmittals/TransmittalDetails.
    aspx?TransmittalID=5700 ............................................................8

Office of the Press Sec'y, The White House, Memo. From
    President Barack Obama, *Federal Benefits and Non-*
    *Discrimination* (June 17, 2009), *available*
    *at* http://www.whitehouse.gov/assets/documents/2009fed
    benefits_mem_rel.pdf .................................................................11

Rev. Rul. 2013-17, 2013-38 I.R.B. 201 ......................................... 15-16

Roberton Williams, *IRS Recognition of Same-Sex Marriages Won't Make It Any Easier For Those Couples At Tax Time*, Forbes, Aug. 80, 2013, *available at* http://www.forbes.com/sites/beltway/2013/08/30/irs-recognition-of-same-sex-marriages-wont-make-it-any-easier-for-those-couples-at-tax-time/ ........................................17

Soc. Sec. Admin. Program Operations Manual Systems GN00210.100...............................................................28

Soc. Sec. Admin., Chief Judge Bulletin No. 13-04, *Windsor Supreme Court Decision: Hold Claims Involving Same-Sex Married Couples* (July 2, 2013), *available at* https://secure.ssa.gov/apps10/public/reference.nsf/links/07242013023550PM..................................................27

*Statement by Secretary of Homeland Security Janet Napolitano on the Implementation of the Supreme Court Ruling on the Defense of Marriage Act*, dhs.gov (July 1, 2013), http://www.dhs.gov/news/2013/07/01/statement-secretary-homeland-security-janet-napolitano-implementation-supreme-court ............................................. 12-13

*Statement by the President on the Supreme Court Ruling on the Defense of Marriage Act*, whitehouse.gov (June 26, 2013), http://www.whitehouse.gov/doma-statement ....................................7

*Statement of Carolyn Colvin, Acting Comm'r of Social Security, on Payments to Same-Sex Couples*, ssa.gov (Aug. 9, 2013), *available at* http://www.ssa.gov/pressoffice/pr/doma-statement-pr.html ...................................................................27

U.S. Bureau of Labor Statistics, *Employee Benefits in the United States – March 2013* (July 17, 2013), http://www.bls.gov/news.release/ebs2.nr0.htm ...............................20

U.S. Citizenship & Immigration Servs., *Same-Sex Marriages*

x

(July 26, 2013), *available*
    *at* http://www.uscis.gov/portal/site/uscis/ .............................................. 13-14

*U.S. Visas for Same-Sex Spouses*, travel.state.gov, *available at*
    http://travel.state.gov/visa/frvi/frvi_6036.html (last
    visited Oct. 23, 2013)............................................................................13, 15

*Update on the Supreme Court Decision Regarding the Defense*
    *of Marriage Act and Its Implications for Social Security*
    *Benefits*, ssa.gov (July 17, 2013) *available*
    *at* http://ssa.gov/pressoffice/pr/doma-pr.html. ............................................27

Vet Center Services, 78 Fed. Reg. 57,067 (Sept. 17, 2013) ....................................12

## INTEREST OF AMICUS CURIAE

Amicus Gay & Lesbian Advocates & Defenders ("GLAD") is a public-interest legal organization working in New England and nationally to create a just society free of discrimination based on gender identity and expression, HIV status and sexual orientation. In addition to GLAD's litigation on workplace discrimination, parenting issues, access to health care, public accommodations and services, and myriad other issues in law, GLAD has also litigated for access to marriage in several states, most notably as counsel in *Goodridge v. Department of Public Health*, 798 N.E.2d 941 (Mass. 2003); *Kerrigan v. Commissioner of Public Health*, 957 A.2d 407 (Conn. 2008), and *Baker v. Vermont*, 744 A.2d 864 (Vt. 1999). GLAD also led the briefing on whether a civil union system was an adequate remedy to the constitutional violation the Supreme Judicial Court had found in *Goodridge, see Opinions of the Justices to the Senate*, 802 N.E.2d. 565 (Mass. 2004), and has worked to win marriage legislatively and at the ballot box in the other New England states. GLAD also litigated two separate challenges to the federal Defense of Marriage Act: *Gill, et al. v. Office of Personal Management, et al.*, decided as *Massachusetts v. United States Department of Health and Human Services*, 682 F.3d 1 (1st Cir. 2012), and *Pedersen, et al. v. Office of Personnel*

1

*Management*, 881 F.Supp. 2d 294 (D. Conn 2012). GLAD has appeared as amicus

in other marriage-related litigation throughout the United States.[1]

---

[1]     The parties have consented to the filing of this brief. Counsel for the parties have not authored this brief. The parties and counsel for the parties have not contributed money that was intended to fund preparing or submitting the brief. No person other than the amicus curiae, its members, or their counsel contributed money that was intended to fund preparing or submitting the brief.

# ARGUMENT

Denying the equal right to marry unconstitutionally deprives couples joined in domestic partnership and civil union of equal treatment under law.

## I.  Nevada's and Hawaii's Registered Domestic Partnership and Civil Union Laws Perpetuate Discrimination Even Though They Also Provide Some Benefits.

Nevada and Hawaii have each created a relationship which, though conferring "the same" legal rights and responsibilities as are granted and imposed on those who marry, is explicitly not marriage. Under the rubric of "registered domestic partnership" in Nevada and "civil union" in Hawaii, couples joined in these relationships participate in each state's framework regulating married couples vis-a-vis each other, third parties, and the state. Nev. Rev. Stat. § 122A.200(1)(a); Haw. Rev. Stat. § 572B-9. Couples joined in these relationships have access to state-level protections "touching nearly every aspect of life and death," *Goodridge v. Dep't of Pub. Health*, 798 N.E.2d 941, 955 (Mass. 2003), thereby increasing material security for couples and their children.

Salutary as these laws are, they are also emblematic of the discrimination against same-sex couples at the heart of this case. Enactment of these laws *followed* statutory bans and popular ratification of constitutional bans on marriage for same-sex couples—Nevada enacted its registered domestic partnership law in 2009 after amending its constitution in 2002, and Hawaii enacted civil unions in

3

2011 after its amendment vote in 1998.[2] It is no coincidence that these constitutional bans also followed enactment of the federal Defense of Marriage Act ("DOMA"), Pub. L. No. 104-199, 110 Stat. 2419, among the purposes of which was "to discourage enactment of state same-sex marriage laws" and "put a thumb on the scales and influence a state's decision as to how to shape its own marriage laws." *United States v. Windsor*, 133 S. Ct 2675, 2693 (2013) (quoting *Massachusetts v. U.S. Dep't of Health and Human Servs.*, 682 F.3d 1, 12-13 (1st Cir. 2012) (internal quotation mark omitted)).[3] Both states heeded that call. Just as DOMA sought to "protect marriage" from gay people and deny "the recognition, dignity and protection of the class [of gay people] in their own community," *Windsor*, 133 S. Ct at 2692, so, too, did the barring of the marriage gates at the state level degrade and diminish gay people and their loving commitments.

Both states' actions in later conveying marital rights and responsibilities to "benefit" same-sex couples through a previously unknown legal relationship that is emphatically *not marriage* cannot vitiate the constitutional violation in denying the

---

[2]     Nev. Const. art. 1, § 21 ("Only a marriage between a male and female person shall be recognized and given effect in this state."); Nev. Rev. Stat. § 122.020(1) ("a male and a female person . . . may be joined in marriage."); 1994 Haw. Sess. Laws 217 (codified at Haw. Rev. Stat.§ 572-1) (adding that marriage "shall be only between a man and a woman"); 1997 Haw. Sess. Laws 1247 (codified at Haw. Const. art. I, § 23) (legislature shall have power to reserve marriage to opposite-sex couples).

4

freedom to marry. While these laws provide crucial protections, they also reinforce the idea that gay people are deficient and different from those who may join in marriage. By "creating two contradictory marriage regimes within the same State," the State "diminish[es] the stability and predictability of basic personal relations" and "undermines both the public and private significance" of the couples' relationships. *Id*. at 2694. As with the federal government's disrespect of same-sex couples' marriages, separate systems for same-sex couples "instruct[] . . . all persons with whom same-sex couples interact, including their own children," that their relationships are "less worthy than the marriages of others," *id*. at 2696, and inflict "a deep and scarring hardship." *Goodridge*, 798 N.E.2d at 968. It is only marriage that provides: a "further protection and dignity to [a couple's] bond," *Windsor*, 133 S.Ct. at 2692; "a dignity and status of immense import," *id.*; and a "status of equality with all other married persons," *id*. at 2689. Accordingly, Amicus agrees wholeheartedly with the Plaintiffs that it is an unconstitutional denial of equal protection to deny same-sex couples access to marriage, regardless of any other beneficial legislation providing tangible benefits. *See, e.g, Opinions of the Justices to the Senate,* 802 N.E.2d 565, 571-572 (Mass. 2004); *Kerrigan v. Comm'r. of Pub. Health,* 957 A.2d 407, 416-18 (Conn. 2008); *In re Marriage Cases,* 183 P.3d 384, 445 (Cal. 2008).

This brief addresses a different issue—the fiction that these different relationship statuses can be "equal" to marriage with respect to tangible protections and responsibilities. Now that *Windsor* has invalidated DOMA § 3's federal disrespect of same-sex couples' marriages, 133 S.Ct. at 2695, a colossal chasm divides the protections available to same-sex couples who are married from those who are joined in domestic partnership or civil union.[4] This brief will address the federal government's implementation efforts to date to assist this Court in identifying the differences in tangible benefits, protections, and responsibilities for married same-sex couples and those joined in separate statuses in Nevada and Hawaii. There now exists what the District Court in *Sevcik v. Sandoval*, 911 F. Supp. 2d 996 (D. Nev. 2012), believed was missing before: a "measure of harm that the Court can actually redress, i.e., the denial of equal treatment under the law itself." *Id*. at 1018.

## II.    Marriage Provides Access to Numerous Tangible Protections and Responsibilities Under Federal Law that Are Otherwise Inaccessible to Those Joined in Registered Domestic Partnership or Civil Union.

Overwhelmingly, the federal government uses "marriage" as a gateway for federal protections and responsibilities. By defining "marriage" and "spouse" for

---

[4]    Of course, when Nevada and Hawaii passed their laws, DOMA foreclosed married same-sex couples from receiving federal marital protections, so *federal* benefits and responsibilities were largely irrelevant to the question of providing parity for same-sex couples.

federal law purposes, DOMA § 3 effectively "control[ed] over 1,000 federal laws" where marital or spousal status is a factor. *Windsor*, 133 S.Ct. at 2683 (citing U.S. Gov't Accountability Office, GAO-04-353R, *Defense of Marriage Act: Update to Prior Report 1* (2004)). By denying "marriage" to same-sex couples, Nevada and Hawaii have placed those protections and responsibilities off-limits to those it has consigned to "registered domestic partnership" and "civil union." *Garden State Equality v. Dow*, No. M-208, slip op. at 15 (N.J. Oct. 18, 2013) ("The State's statutory scheme effectively denies [same-sex couples] the ability to receive federal benefits now afforded to married partners.").

On the same day *Windsor* was decided, the President ordered a complete and comprehensive review of "all relevant federal statutes to ensure [the] decision, including its implications for Federal benefits and obligations, is implemented swiftly and smoothly." *Statement by the President on the Supreme Court Ruling on the Defense of Marriage Act*, whitehouse.gov (June 26, 2013).

In striking DOMA § 3, the Supreme Court confined its holding to "lawful marriages." *Windsor*, 133. S.Ct. at 2696. Consistent with their existing benefits frameworks, the agencies that have spoken to date have extended protections and responsibilities to *married* same-sex couples and many explicitly *do not* extend marital protections to those joined in registered domestic partnership and civil union. The arms of the federal government so far extending marriage-based

7

protections include the Office of Personnel Management ("OPM"), the Department of Defense ("DoD"), the Department of Homeland Security ("DHS"), the Department of State ("DoS"), the Department of the Treasury and Internal Revenue Service ("IRS"), the Department of Labor ("DoL"), the Department of Health and Human Services ("DHHS"), the Social Security Administration ("SSA"), the Department of Veterans Affairs ("VA"), the Office of Governmental Ethics ("OGE"), and the Federal Elections Commission ("FEC"), as discussed herein.

     A.    <u>Office of Personnel Management</u>

As administrator of health and insurance programs for federal employees and retirees, and as manager of pension benefits for federal civilian retirees and their families, OPM has issued extensive post-*Windsor* guidance. *See* OPM, Benefits Admin. Letter No. 13-203, *Coverage of Same-Sex Spouses*, 2 (July 17, 2013), *available at* http://www.opm.gov/retirement-services/publications-forms/benefits-administration-letters/2013/13-203.pdf. *See also* OPM, Memo. from Dir. Elaine Kaplan, *Guidance on the Extension of Benefit to Married Gay and Lesbian Federal Employees, Annuitants, and Their Families* (June 28, 2013), *available at* http://www.chcoc.gov/transmittals/TransmittalDetails.aspx?TransmittalID=5700.

OPM provides that "[b]enefits coverage is now available to a legally married same-sex spouse of a Federal employee or annuitant," but that "same-sex couples who are in a civil union or other forms of domestic partnership . . . will remain ineligible for most Federal benefits programs." OPM, Benefits Admin. Letter at 1-2. This comports with the statutory definition of "member of family," which includes "the spouse of an employee or annuitant." 5 U.S.C. § 8901(5).

Federal employees and retirees married to a spouse of the same sex may now secure "Self and Family" coverage under the Federal Employees Health Benefits Program (FEHB). OPM, Benefits Admin. Letter at 2. When a child's parents are married, their children "will be treated in the same manner as those of opposite-sex marriages and will be eligible family members according to the same eligibility guidelines. This includes coverage for children of same-sex spouses as stepchildren." *Id*.

Life insurance through the Federal Employees Group Life Insurance and dental and vision benefits through the Federal Employees Dental and Vision Program are likewise available to the spouse and children of newly covered workers in the same manner as different-sex spouses and children of different-sex marriages. *Id*. at 5-6. Spouses of federal employees and active members of the uniformed services are also now eligible for the Federal Long Term Care Insurance Program (FLTCIP), and through them, their parents and other qualifying relatives

are also eligible for coverage. *Id*. at 7. As with private-sector Flexible Savings

Accounts, the federal counterpart only reimburses healthcare expenses of a spouse

or qualifying child. *Id*. at 8. Finally, Family Medical Leave applies only for "any

legally recognized marriage." OPM, Memo. from Dir. Elaine Kaplan, *Family and

Medical Leave Act (FMLA) Coverage of Same-Sex Spouses* (Oct. 21, 2013),

*available at*

http://www.chcoc.gov/transmittals/TransmittalDetails.aspx?TransmittalID=5834.[5]

Retirees married to a spouse of the same sex can elect survivor annuities for

their spouses, and have two years from the date of the *Windsor* decision to so

notify OPM. *See* Notice of Opportunity for Annuitants to Elect Survivor Annuity

Benefits for Same-Sex Spouses, 78 Fed. Reg. 47,018 (Aug. 2, 2013).

B.    Department of Defense

On August 13, 2013, DoD Secretary Hagel stated that, "[i]t is now the

Department's policy to treat all married military personnel equally. The

Department will construe the words 'spouse' and 'marriage' to include same-sex

spouses and marriages, and the Department will work to make the same benefits

available to all military spouses, regardless of whether they are in same-sex or

opposite-sex marriages." DoD, Memo. From Sec'y Chuck Hagel, *Extending

Benefits to the Same-Sex Spouses of Military Members* at 1 (Aug. 13, 2013),

---

[5]    Existing leave and FLTCIP benefits for domestic partners rremain in place.
*See, e.g.*, *id.* at "Other Leave Benefits."

*available at* http://www.defense.gov/home/features/2013/docs/Extending-Benefits-to-Same-Sex-Spouses-of-Military-Members.pdf ("DoD Initial Memo.").

Servicemembers may now enroll their spouses in the military identification system and access benefits reserved to married persons, including TRICARE, the basic allowance for housing, and the family separation allowance. *See DOD Announces Same-Sex Benefits*, defense.gov (Aug. 14, 2013), http://www.defense.gov/releases/release.aspx?releaseid=16203.

At the same time, as part of "mak[ing] the same benefits available to all military spouses," DoD Initial Memo. at 1, the Secretary also authorized leave to allow servicemembers who are part of a same-sex couple time off in order to marry. DoD, Memo. from Sec'y Chuck Hagel, *Further Guidance on Extending Benefits to the Same-Sex Spouses of Military Members* (Aug. 13, 2013), *available at* http://www.defense.gov/home/features/2013/docs/Further-Guidance-on-Extending-Benefits-to-Same-Sex-Spouses-of-Military-M.pdf.

Non-marital "domestic partners" of military members enjoy some familial but not spousal protections under measures implemented by the President and previous Secretary of Defense Panetta. *See* Office of the Press Sec'y, The White House, Memo. from President Barack Obama, *Federal Benefits and Non-Discrimination* (June 17, 2009), *available at* http://www.whitehouse.gov/assets/documents/2009fedbenefits_mem_rel.pdf; DoD,

11

Memo. from Sec'y Leon Panetta, *Extending Benefits to Same-Sex Domestic Partners of Military Members* (Feb. 11, 2013), *available at* www.defense.gov/news/Same-SexBenefitsmemo.pdf. Having "identified family member and dependent benefits that may lawfully be provided to same-sex domestic partners and their children through modifications of DoD policies and regulations," DoD is now formalizing those protections, which are conditioned on completion of a "declaration attesting to the existence of [the couple's] committed relationship . . . ." *See Declaration/Dissolution of a Same-Sex Domestic Partnership for DEERS Enrollment*, 78 Fed. Reg. 54,633, 54,6344 (proposed Aug. 29, 2013). There is no suggestion that DoD will extend *spousal* benefits to domestic partners. *Id. See also* Vet Center Services, 78 Fed. Reg. 57,067 (Sept. 17, 2013) (to be codified at 38 C.F.R. pt. 17) (VA and DoD allowing domestic partners access to particular counseling services).

    C.    <u>Department of Homeland Security</u>

On July 1, 2013, then-DHS Secretary Napolitano directed U.S. Citizen and Immigration Services (USCIS) to "review immigration visa petitions filed on behalf of a same-sex spouse in the same manner as those filed on behalf of an opposite-sex spouse." *Statement by Secretary of Homeland Security Janet Napolitano on the Implementation of the Supreme Court Ruling on the Defense of Marriage Act*, dhs.gov (July 1, 2013),

http://www.dhs.gov/news/2013/07/01/statement-secretary-homeland-security-janet-napolitano-implementation-supreme-court. That directive was formalized on July 26, 2013. *See* USCIS, *Same-Sex Marriages* (July 26, 2013), *available at* http://www.uscis.gov/portal/site/uscis/ (follow "Same-Sex Marriages" hyperlink) ("USCIS FAQ"). *See also U.S. Visas for Same-Sex Spouses*, travel.state.gov, *available at* http://travel.state.gov/visa/frvi/frvi_6036.html (last visited Oct. 23, 2013) (spousal eligibility based on valid marriage) ("Visa FAQ").

These changes will make a profound difference in the lives of binational couples who are legally married or who can join in marriage. U.S. citizens and lawful permanent residents can now file petitions to sponsor their spouses of the same sex for family-based immigration visas, and can file fiancé or fiancée petitions based on their engagement to marry a person of the same sex. USCIS FAQ at QA 1-2. "[S]ame-sex marriages will be treated exactly the same as opposite-sex marriages" when immigration law conditions eligibility for discretionary waivers of certain inadmissibility grounds on marriage or status of a spouse, *id*. at QA 9, and marriage reduces the residence period required for naturalization of non-citizens married to U.S. citizens, *id*. at QA 8.

All other immigration benefits conditioned on the existence of a marriage or one's status as a spouse now include marriages of same-sex couples. *Id*. at QA 6. Examples include a non-citizen seeking to accompany or follow his or her spouse

13

who has been granted a family-sponsored immigrant visa, an employment-based visa, refugee status, or asylum. *Id.*

USCIS is also making a concerted effort to identify and, at no charge, reopen petitions by U.S. citizens to adjust the immigration status of their spouse of the same sex denied because of DOMA § 3. *Id.* at QA 5. Likewise, if an individual's work authorization was denied or revoked based on the denial of a concurrently filed application or petition, the agency will reconsider the denial or revocation of the work authorization and issue a new work authorization to the extent necessary. *Id.*

Finally, immigration eligibility of children, parents, and siblings often hinges on the existence of a marriage. Where an individual's own marriage or parent's marriage affects "whether the individual will qualify as a 'child,' a 'son or daughter,' 'a parent,' or a 'brother or sister' of a U.S. citizen or lawful permanent resident," marriages of same-sex couples will be treated the same as other marriages. *Id.* at QA 7.

D.    Department of State

On August 2, 2013, DoS Secretary Kerry announced that, effective immediately, U.S. embassies and consulates would adjudicate visa applications based on a marriage of a same-sex couple in the same way that they adjudicate applications for different-sex spouses. *See Announcement on Visa Changes for*

*Same-Sex Couples*, state.gov (Aug. 2, 2013),

http://www.state.gov/secretary/remarks/2013/08/212643.htm. This means that a

spouse of the same sex as the visa applicant coming to the U.S. for any purpose,

including work, international exchange, or legal immigration, is eligible for a

derivative visa. Stepchildren in the family of a married same-sex couple can also

qualify as beneficiaries or for derivative status. *See* Visa FAQ.

DoS also announced that certain retirement benefits available to members of

the Foreign Service and annuitants, such as spousal survivor benefits, now apply to

spouses of the same sex in the same way as to all other spouses. DoS

Announcement No. 2013_07_026, *Foreign Service Retirement Benefits for Same-*

*Sex Spouses* (July 8, 2013) (on file with author). The retirement systems for State

Department Civil Service employees are administered by OPM, discussed in Part

II(A), *supra*.

E.    Department of the Treasury and Internal Revenue Service

On August 29, 2013, IRS ruled that all legal marriages of same-sex couples

will be respected for federal tax purposes. Rev. Rul. 2013-17, 2013-38 I.R.B. 201,

204 ("For Federal tax purposes, the terms 'spouse,' 'husband and wife,' 'husband,'

and 'wife' include an individual married to a person of the same sex if the

individuals are lawfully married under state law, and the term 'marriage' includes

such a marriage between individuals of the same sex."). Conversely, the Revenue

Ruling specifically held that marital protections do not extend to persons "who have entered into a registered domestic partnership, civil union, or other similar formal relationship recognized under state law that is not denominated as a marriage under the laws of that state . . . ." *Id.*

Tax rules affect nearly every American whether by liability for federal income tax, through workplace benefits and retirement vehicles, or with divorce.[6] The federal government's respect for valid marriages provides enormous advantages to those joined in marriage compared to those in registered domestic partnerships or civil unions.

Since "marital status" is central to determining filing status, married same-sex couples now must file their federal returns with the married filing jointly ("MFJ") or married filing separately status. *Answers to Frequently Asked Questions for Individuals of the Same Sex Who Are Married Under State Law*, irs.gov, QA1 (last updated Sept. 19, 2013), www.irs.gov/uac/Answers-to-

---

[6]     Gift and estate taxation also merit attention. Spouses have an unlimited ability to make gifts and transfer property to one another without incurring taxes, 26 U.S.C. § 1041, or being concerned about gift tax implications, 26 U.S.C. §§ 2501, 2512. Without this protection, a homeowner may be reluctant to make his or her partner a joint owner of the family home because of the gift tax consequences. Tax protections continue after death, so that a deceased spouse's estate may transfer all assets to the surviving spouse without incurring any estate tax. 26 U.S.C. § 2056(a). This marital deduction lets married couples postpone the federal estate tax that otherwise would have to be paid on a married person's estate by deferring any tax on property that passes to the surviving spouse until the surviving spouse's death.

Frequently-Asked-Questions-for-Same-Sex-Married-Couples ("IRS FAQ"). Couples in registered domestic partnership or civil union are not permitted to file jointly or as married.

As a threshold matter, the ability to use the same filing status for state and federal purposes is itself an advantage. Those joined in registered domestic partnership or civil union must file their state returns under the same rules applicable to married persons, but may not do so federally. However, some items on a marriage-equivalent state return require the taxpayer to have a married *federal* return in place first. This means those in separate statuses must prepare a *pro forma* "married" federal return in order to complete their state income taxes returns correctly, and then go back and unwind what is joint and commingled in order to file a single or head of household federal return with the IRS. This reallocation and resorting can be a complex and expensive process. Roberton Williams, *IRS Recognition of Same-Sex Marriages Won't Make It Any Easier For Those Couples At Tax Time*, Forbes, Aug. 80, 2013, *available at* http://www.forbes.com/sites/beltway/2013/08/30/irs-recognition-of-same-sex-marriages-wont-make-it-any-easier-for-those-couples-at-tax-time/.

An MFJ return reflects the reality that married taxpayers are one family and one financial unit. MFJ taxpayers may pool expenditures to meet the required threshold for deductions of uncompensated medical and dental expenses, 26 U.S.C.

§ 213, which can be advantageous compared to the standard deduction. Filing as MFJ allows taxpayers to exclude $500,000 of gain on the sale of a principal residence, or double that of other filers, 26 U.S.C. § 121, even when the house is titled in only one name. Similarly, an MFJ return is a prerequisite to fund an IRA for a non-working spouse, who thus may build retirement assets even while taking time out of the workforce to care for children or elderly parents. 26 U.S.C. § 219(c). There are also significant tax benefits for married persons under retirement and workplace group health plans, discussed in Part II(F), *infra*.

For other MFJ filers, some tax liabilities could increase. Since tax credits are reduced or phased out as income rises above certain thresholds, the Earned Income Tax Credit, Child and Dependent Care Credit, Child Tax Credit, Education Tax Credits, and Adoption Credit could be affected. Margot L. Crandall-Hollick et al., Cong. Research Serv., R43157, *The Potential Federal Tax Implications of* United States v. Windsor *(Striking Section 3 of the Defense of Marriage Act (DOMA)): Selected Issues* 7-8 (July 18, 2013). MFJ filers may not double up on other tax advantages the way some could when they used the single or head of household filing status, IRS FAQ at QA 9 (referring to offset for passive activity losses for rental real estate), and must comply with community property rules where applicable, *id*.

In the end, filing status and other changes may result in increased or decreased income tax liabilities for same-sex couples, just as for others. In any event, the result will be *fair* because all married persons will be subject to the same rules and obligations, and "[r]esponsibilities, as well as rights, enhance the dignity and integrity of the person." *Windsor*, 133 S.Ct. at 2694.[7]

F.    Department of Labor

***Family Medical Leave.*** The Family Medical Leave Act (FMLA) provides 12 workweeks of unpaid leave in any 12-month period to a spouse of someone with a "serious health condition."[8] 29 U.S.C. § 2612(a)(1)(C). On August 9, 2013,

---

[7]    Three features of tax law also make it easier for divorcing spouses, but not civil union or domestic partners, to divide their assets equitably and provide for ongoing support in the event of divorce.  First, property transferred between spouses due to divorce, including IRAs, is not subject to income or gift tax. 26 U.S.C. § 1041. Same-sex spouses no longer have to worry that transferring a home or other asset will be a taxable event. Second, if alimony or separate maintenance payments are paid to a spouse or former spouse under a divorce or separation instrument or court order, the payments are deductible to the person making the payments. 26 U.S.C. § 215(a). Third, although retirement benefits from a plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA") are normally reserved to the employee, 29 U.S.C. § 1056(d)(1); 26 U.S.C. § 401(a)(13)(a), in the event of a divorce, some or all of those benefits may be awarded to a non-employee, former spouse through a court-issued "Qualified Domestic Relations Order" ("QDRO"). 29 U.S.C. § 1056(d)(3); 26 U.S.C. §§ 401(a)(13)(B), 414(p).

[8]    FMLA covers many, but not all employers. *See, e.g.* 29 U.S.C. § 2611(4)(A)(i) (FMLA applies to employer "who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year"); 29 U.S.C. § 2611(2)(B)(ii) (worker is not an "eligible

DoL issued a fact sheet clarifying that spouses of the same sex may also be permitted to take leave to care for the employee's spouse who has a serious health condition. *See* DOL, Wage & Hour Div., Fact Sheet No. 28F, *Qualifying Reasons for Leave under the Family and Medical Leave Act* at 2 (Aug. 2013), *available at* http://www.dol.gov/whd/regs/compliance/whdfs28f.htm. A spouse must be "recognized under state law for purposes of marriage in the state where the employee resides, including . . . same-sex marriage." *Id*. Accordingly, absent employer largesse, workers joined in separate statuses do not have access to this means of balancing family and work commitments.

   ***Health Insurance.*** In 2013, 85% of full-time U.S. workers in private industry had access to medical benefits through an employer, and 74% to an employer-provided retirement plan.[9] Under the Internal Revenue Code, the value of the health insurance for an employee's spouse, child or other qualifying tax dependent is *not* subject to federal income tax even though such benefits are a form of compensation. 26 U.S.C. § 106. By contrast, the fair-market value of employer-

---

employee" if the employee is at a worksite with fewer than 50 employees and the employer has fewer than 50 employees within 75 miles of that worksite).

[9]    U.S. Bureau of Labor Statistics, *Employee Benefits in the United States – March 2013* (July 17, 2013), http://www.bls.gov/news.release/ebs2.nr0.htm. Health benefits are typically offered through a "group health plan." *See* 29 U.S.C. § 1167(1); 26 U.S.C. § 5000(b)(1).

provided healthcare benefits to a non-spouse is taxable income to the employee.[10] On average, this "imputed" income requires that employees with partners pay $1,069 more annually than married employees with similar coverage. *See* M. V. Lee Badgett, Center for American Progress & UCLA Williams Institute, *Unequal Taxes on Equal Benefits* 7 (Dec. 2007).[11]

Married employees with a spouse of the same sex now also have access to other tax-advantaged fringe benefits to provide for their spouses and dependents. An employer may allow a married employee to reduce her taxable income by paying, on a pre-tax basis, the cost of coverage for a spouse.[12] A married employee may reduce her taxable compensation through pre-tax contributions to a "cafeteria

---

[10]    *See, e.g.*, Treas. Regs. §§ 105, 106(a), 152; Treas. Reg. § 1.106-1 (excluding from gross income "contributions which his employer makes to an accident or health plan for compensation . . . to the employee for personal injuries or sickness incurred by him, his spouse or his dependents").

[11]    For businesses and employers, determining and recording the amount of "imputed" income to the employee due to partner health coverage adds administrative costs and burdens to payroll systems. The employer also pays a portion of federal social security (FICA) and unemployment (FUTA) taxes based on employee's wages. Those additional taxes paid may now be recouped by the employer and employee for married same-sex couples. *See generally*, IRS, Notice 2013-61, *Application of Windsor Decision and Rev. Rul. 2013-17 to Employment Taxes and Special Administrative Procedures for Employers to Make Adjustments or Claims for Refund or Credit*, *available at* http://www.irs.gov/pub/irs-drop/n-13-61.pdf.

[12]    26 U.S.C. §§ 105(b), 106(a) (limiting pre-tax treatment of medical expenses to employees, spouses, and certain dependents).

plan" on behalf of a spouse or other dependents, 26 U.S.C. § 125(a), or use pre-tax income to fund a "flexible spending arrangement," "health reimbursement arrangement," or "health savings account," and then seek tax-free reimbursement for qualifying medical expenses of a spouse or tax dependent. 26 U.S.C. § 105. Those joined in separate statuses cannot pay for coverage on a pre-tax basis under such a "cafeteria plan" unless their partner is a tax dependent. [13]

These provisions are the best of both worlds for married employees, allowing both enhanced access to health insurance for their spouses and children and tax-advantaged means for doing so. Other laws require most private employers to continue offering group health coverage to an employee upon certain qualifying events, such as job termination, the employee's death, and divorce or legal separation. These COBRA healthcare continuation benefits are mandatory only for qualified beneficiaries—namely, participants, spouses and their children.[14] Under HIPAA, an employee who marries may immediately add a new spouse to his or her

---

[13]    A tax dependent is someone who lives in the same household as the taxpayer and the taxpayer furnishes more than one-half of the cost of maintaining such household during the taxable year. 26 U.S.C. § 152(d).

[14]    Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat. 82 (codified in scattered titles, including at 29 U.S.C. §§ 1161-1169). *See also* Treas. Reg. § 54.4980B-1. COBRA applies to businesses with 20 or more employees. 29 U.S.C. § 1161(b). *See also* 29 U.S.C. §§ 1163(1)-(6) (defining qualifying events for COBRA coverage); *id*. § 1167(3) (defining "qualified beneficiary," in relevant part, in terms of the covered employee's "spouse").

healthcare plan that allows for spousal coverage without waiting for the open enrollment period.[15]

*Retirement Plans*. Marital status is a central factor in protections under retirement plans. On September 18, 2013, DoL issued guidance "on the meaning of 'spouse' and 'marriage'" as they appear in the ERISA and Internal Revenue Code provisions interpreted by that Department. *See* DoL, Technical Release No. 2013-04, *Guidance to Employee Benefit Plans on the Definition of 'Spouse' and 'Marriage' under ERISA and the Supreme Court's Decision in* United States v. Windsor at II (Sept. 18, 2013), *available at* http://www.dol.gov/ebsa/newsroom/tr13-04.html (recognizing as spouses those "legally married in a state that recognizes such marriages," and a "marriage" as one that is "legally recognized as a marriage under any state law."). Pursuant to the guidance, "marriage" and "spouse" do not include "individuals in a formal relationship recognized by a state that is not denominated a marriage under state law, such as a domestic partnership or a civil union." *Id*. The IRS also stated that persons joined in a registered domestic partnership or civil union are not considered spouses "for purposes of applying the federal tax law requirements relating to qualified retirement plans." IRS FAQ at QA 16(3).

---

[15]    Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 (codified in scattered titles, including at 29 U.S.C. §§ 1181-1183). *See also* 26 U.S.C. § 9801(f) (discussing "special enrollment"); Treas. Reg. § 54.9801-6 (regulating coverage in special enrollment periods).

Most employee retirement benefit plans are controlled by ERISA, which provides substantive protections to spouses of plan participants. These protections include: providing survivor benefits under the plan; spousal consent requirements when the plan participant spouse attempts to choose another form of benefit payment or to designate a beneficiary other than the beneficiary spouse; and tax benefits.

Pension plans, which include defined benefit plans offering annuity forms of benefits and money purchase plans, as well as certain defined contribution plans, must provide benefits in a form where the spouse may receive a portion of the benefit. This spousal benefit is typically in the form of a 50% Qualified Joint and Survivor Annuity ("QJSA"), where the employee receives a benefit during life with an annuity paid to the surviving spouse, unless the non-participant spouse consents to another form of payment. 29 U.S.C. § 1055(d); 26 U.S.C. § 417(b). Plans must also generally provide special rights to the participant spouse's benefit if the participant dies while still employed, such as a Qualified Preretirement Survivor Annuity, 29 U.S. C. § 1055(e); 26 U.S.C. § 417(c), which may be waived by the spouse beneficiary.

Benefits under a QJSA are excluded from the total of retirement benefits an individual may receive each year on a tax-deferred basis. 26 U.S.C. § 415(b)(2)(b). While partners cannot defer the payment of death benefits and accompanying

24

taxes, a spouse may do so until age 70½. 26 U.S.C. § 401(a)(9). Retirement plans also allow spouses, but not others, to use a pre-retirement "hardship distribution" from a 401(k) plan for medical emergencies, as well as for tuition or funeral expenses.[16] Although the distribution is generally taxable, no early-withdrawal penalties apply, and even tax can be avoided if certain criteria are met, including distributions for spousal medical expenses and QDROs. 26 U.S.C. §§ 72(t)(2)(B)-(C).

### G.  Department of Health and Human Services

On August 29, 2013, DHHS issued a post-*Windsor* memo to clarify that married same-sex spouses who are beneficiaries of private Medicare plans have equal access to coverage in certain skilled nursing home facilities where their spouse lives. DHHS, *Impact of United States v. Windsor on Skilled Nursing Facility Benefits for Advantage Enrollees* at 1 (Aug. 29, 2013), *available at* http://www.cms.gov/Medicare/Health-Plans/HealthPlansGenInfo/Downloads/SNF_Benefits_Post_Windsor.pdf. In this "first guidance," the memo defines "spouse" to include only "individuals of the same sex who are lawfully married under the law of a state, territory, or foreign jurisdiction." *Id. See also*, DHHS, Ctrs. for Medicaid and Medicare Servs.,

---

[16]    26 U.S.C. § 401(k)(2)(B)(i)(IV); Treas. Regs. §§ 1.401(k)-1(d)(3)(iii)(B)(1), (3), (5).

*Guidance on Internal Revenue Ruling 2013-17 and Eligibility for Advance Payments of Premium Tax Credit and Cost-Sharing Reductions* at 2 (Sept. 27, 2013) *available at* http://www.cms.gov/CCIIO/Resources/Regulations-and-Guidance/Downloads/marketplace-guidance-on-irs-2013-17.pdf (eligibility for certain tax credits and cost reductions under Affordable Care Act for health insurance purchased through a marketplace must "treat same-sex spouses in the same manner as opposite-sex spouses."). Another letter from DHHS addressing eligibility for Medicaid and the Children's Health Insurance Program ("CHIP"), stated "a marriage is recognized for Medicaid and CHIP purposes if it is legally valid under applicable state law."  DHHS, Ctrs. for Medicaid and Medicare Servs., *SHO# 13-006*, at 2 (Sept. 27, 2013) *available at* http://www.medicaid.gov/Federal-Policy-Guidance/Downloads/SHO-13-006.pdf. However, the letter also provides that "if a state or territory recognizes a civil union or domestic partnership as a marriage," then "that marital status is recognized under the Medicaid and CHIP programs." *Id*. at 4-5. The very point of states erecting civil union and domestic partnership systems, however, is to ensure they are *not* denominated as a marriage. DHHS simply appears to be acknowledging "the unique federal-state relationship that characterizes the Medicaid and CHIP programs," *id*. at 1, but the polestar for treating a couple as married remains recognition of a relationship "as a marriage." *Id*. at 4.

H.    <u>Social Security Administration</u>

Immediately following the *Windsor* decision, SSA issued a directive to the entire agency stating that it was working to implement the decision, and ordering that all claims, actions, and appeals in which a marriage of a same-sex couple may play a role be held pending further guidance. SSA, Chief Judge Bulletin No. 13-04, Windsor *Supreme Court Decision: Hold Claims Involving Same-Sex Married Couples* (July 2, 2013), *available at* https://secure.ssa.gov/apps10/public/reference.nsf/links/07242013023550PM.

SSA has also issued a public statement encouraging individuals who believe they may be eligible for Social Security benefits to apply now, and stating that the agency will move swiftly to process claims once it has finalized instructions for its personnel implementing the *Windsor* decision. *See Update on the Supreme Court Decision Regarding the Defense of Marriage Act and Its Implications for Social Security Benefits*, ssa.gov (July 17, 2013) *available at* http://ssa.gov/pressoffice/pr/doma-pr.html.

As of August 9, 2013, SSA began processing spousal benefits claims. *See Statement of Carolyn Colvin, Acting Comm'r of Social Security, on Payments to Same-Sex Couples*, ssa.gov (Aug. 9, 2013) *available at* http://www.ssa.gov/pressoffice/pr/doma-statement-pr.html, and has posted processing instructions for these claims through its operating manual for field

27

offices. SSA Program Operations Manual Systems GN 00210.100. SSA has not yet issued processing instructions for other spouse-based benefits, such as the surviving spouse and spousal disability benefits.

Notably, on September 9, 2013, the SSA website added an FAQ for same-sex couples in civil unions or other legal relationships which encourages potential claimants to apply for benefits right away to preserve their filing dates, even as SSA continues working with the Department of Justice ("DOJ") "to develop and implement policy and processing instructions on [the] issue." *Benefits Eligibility for Couples of Civil Unions or other Legal Same-Sex Relationships*, ssa.gov (Sept. 9, 2013), *available at* http://ssa-custhelp.ssa.gov/app/answers/detail/a_id/2501. This raises the question of whether the agency might interpret 42 U.S.C. § 416(h)(1)(A)(ii) to provide for spousal benefits to "deemed" spouses on the grounds that, under the laws applied by the courts of the insured's state of domicile, the courts could find that the applicant has "the same status with respect to the taking of [intestate personal] property" as the insured's spouse. This provision certainly appears to be one which *should* allow protections for those joined in civil union and registered domestic partnership, albeit as "deemed spouses," and does not contradict the overwhelming emphasis on extending protections to married spouses. SSA has not yet announced its interpretation of this atypical statutory provision.

I.     Department of Veterans Affairs

VA has not yet issued any policy guidance on implementing the *Windsor* decision.  However, the U.S. Attorney General notified the Congress that in light of *Windsor*, the "President has directed the Executive Branch to cease enforcement of" Title 38 sections containing gendered definitions of "marriage" and "spouse." DOJ, Office of the Att'y General, Letter to Honorable John Boehner at 1 (Sept. 4, 2013) *available at*

http://www.justice.gov/iso/opa/resources/557201394151530910116.pdf.

As the Attorney General stated, enforcing a different-sex definition of "spouse" "would have a tangible adverse effect on the families of veterans and, in some circumstances, active-duty service members and reservists, with respect to survival, health care, home loan, and other benefits." *Id*. at 2. Absent authorization from VA, those joined in registered domestic partnership and civil union have no access to spousal benefits.[17]

J.     Office of Governmental Ethics

On August 19, 2013, OGE issued an advisory placing federal employees "on notice" that "the terms 'marriage,' 'spouse,' and 'relative' [apply] to a same-sex

---

[17]     Another statutory provision in Title 38, however, purports to limit access to veterans benefits to marriages valid "according to the law of the place where the parties resided at the time of the marriage or the law of the place where the parties resided at the time the right to benefits accrued." 38 U.S.C. § 103(c). VA has not yet issued guidance on this provision.

marriage and a same-sex spouse." OGE, LA-13-10, *Effect of the Supreme Court's Decision in* United States v. Windsor *on the Executive Branch Ethics Program*, at 2 (Aug. 19, 2013), *available at* www.oge.gov/OGE-Advisories/Legal-Advisories/LA-13-10--Effect-of-the-Supreme-Court-s-Decision-in-United-States-v--Windsor-on-the-Executive-Branch-Ethics-Program. Moreover, these terms do not include "a federal employee in a civil union, domestic partnership, or other legally recognized relationship other than marriage."[18]

### K.    Federal Election Commission

FEC has released two advisory opinions concluding that same-sex couples validly married are "spouses" for purposes of FEC regulations. One advisory opinion, written in response to a request from the Democratic Senatorial Campaign Committee, provides that joint contributions by a "spouse" encompass contributions by same-sex spouses; that a Senate candidate who is legally married to a spouse of the same sex may utilize jointly owned assets under the same conditions as a Senate candidate who is married to a different-sex spouse; and that married same-sex couples are covered by the term "families" for purposes of permitting a corporation or labor organization to allow a representative of a political party to address and ask for contributions in certain circumstances. *See*

---

[18]    These relationships are a "covered relationship" for purposes of the Standards of Ethical Conduct for Employees of the Executive Branch, however. *Id*. at n.3.

FEC, Advisory Opinion 2013-06 at 4 (July 25, 2013), *available at*

http://www.fec.gov/pages/fecrecord/2013/september/ao2013-06.shtml.

The second advisory opinion, written in response to a request from a former

Senate candidate, provides that in the regulation governing joint contributions by

spouses, 11 C.F.R. § 110.1(i), "spouse" includes same-sex spouses married under

state law. *See* FEC, Advisory Opinion 2013-07 at 2 (July 25, 2013), *available at*

http://www.fec.gov/pages/fecrecord/2013/september/ao2013-07.shtml.

## CONCLUSION

No state may be excused from acting unconstitutionally simply because it

partially ameliorates some of the harsh effects of its discrimination, or because

another state might provide needed protections. Nevada's and Hawaii's laws deny

equal protection and due process to their own citizens within their own

jurisdictions. The Court should reverse the district courts' judgments in both cases.


Respectfully Submitted,

DATE: Oct. 25, 2013          s/ Mary L. Bonauto
                             Civil Rights Project Director
                             Gay & Lesbian Advocates & Defenders
                             30 Winter St., Suite 800
                             Boston, MA 02108
                             (617) 426-1350
                             mbonauto@glad.org
                             *Attorney for Amicus Curiae*

31

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,823 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).
2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman type style.

DATE: October 25, 2013          s/ Mary L. Bonauto
                                Civil Rights Project Director
                                Gay & Lesbian Advocates & Defenders
                                30 Winter St., Suite 800
                                Boston, MA 02108
                                (617) 426-1350
                                mbonauto@glad.org
                                *Attorney for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 25, 2013. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATE: October 25, 2013          s/ Mary L. Bonauto
                                Civil Rights Project Director
                                Gay & Lesbian Advocates & Defenders
                                30 Winter St., Suite 800
                                Boston, MA 02108
                                (617) 426-1350
                                mbonauto@glad.org
                                *Attorney for Amicus Curiae*